## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>       Plaintiff,<br><br>v.<br><br>THRIVE LEARNING, LLC, also doing business as BUSINESS EDUCATION DEPARTMENT, FOCUS, LIGHTWAVE WEB BUILDER, and THRIVE LEARNING INSTITUTE, a Utah limited liability company, MATTHEW RASMUSSEN, individually and as a manager and an owner of THRIVE LEARNING, LLC, and DAVID RASMUSSEN, individually and as a manager and an owner of THRIVE LEARNING, LLC,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [5] MOTION FOR ENTRY OF STIPULATED ORDER OF FINDINGS AND CONCLUSIONS OF LAW**<br><br>Case No. 2:17-cv-00529-DN<br><br>District Judge David Nuffer |

   Plaintiff Federal Trade Commission ("Commission" or "FTC") filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint")[1] under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the Telemarketing and Consumer Fraud Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101–6108. The Commission and Defendants stipulate[2] to the entry of this Memorandum Decision and Order ("Order") to resolve all matters in dispute in this action between them. The FTC moved for entry of this Order.[3] That motion[4] is GRANTED.

---

[1] Docket no. 2, filed June 6, 2017.

[2] Motion for Entry of a Stipulated Order for Permanent Injunction and Monetary Judgment ¶ 2, docket no. 5, filed June 6, 2017.

[3] *Id.*

[4] *Id.*

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and the FTC's trade regulation rule entitled Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in the operation of a telemarketing scheme offering consumers purported business coaching services and products.

3.     Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.     Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.     Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.


## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     "**ACH Debit**" means any completed or attempted debit to a Person's account at a financial institution that is processed electronically through the Automated Clearing House Network.

B.     "**Acquirer**" means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates

or licenses a credit card system (*e.g.* Visa, MasterCard, American Express, and Discover) to authorize Merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

C.     "**Business Coaching Services**" means any product or service, including any program or plan, that is represented, expressly or by implication, to train or teach a consumer how to establish, operate, or improve a business.

D.     "**Chargeback**" means a procedure whereby an issuing bank or other financial institution charges all or part of an amount of a Person's credit or debit card transaction back to the acquiring or merchant bank.

E.     "**Corporate Defendant**" means Thrive Learning, LLC, also doing business as Business Coaching Department, Focus, Lightwave Web Builder, and Thrive Learning Institute, and its successors and assigns.

F.     "**Credit Card Factoring**" means:

(a)     Presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant;

(b)     Employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or

(c)     Obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

G.     "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

H.     "**Customer Information of a Financial Institution**" shall have the same meaning as set out in Section 6827(2) of the Gramm Leach Bliley Act, 15 U.S.C. § 6827.

I.     "**Defendants**" means all of the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination.

J.     "**Individual Defendants**" means Matthew Rasmussen and David Rasmussen.

K.     "**Merchant**" means a Person who is authorized under a written contract with an Acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services.

L.     "**Merchant Account**" means an account with an Acquirer that authorizes and allows a Merchant to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

M.     "**Payment Processing**" means providing a Person, directly or indirectly, with the means used to charge or debit accounts through the use of any payment mechanism, including, but not limited to, Remotely Created Payment Orders, Remotely Created Checks, ACH Debits, or debit, credit, prepaid, or stored value cards.  Whether accomplished through the use of software or otherwise, Payment Processing includes, among other things: (a) reviewing and approving merchant applications for payment processing services; (b) providing the means to transmit sales transaction data from merchants to acquiring banks or other financial institutions;

(c) clearing, settling, or distributing proceeds of sales transactions from acquiring banks or financial institutions to merchants; or (d) processing Chargebacks or returned Remotely Created Payment Orders, Remotely Created Checks, or ACH Debits.

N.    "**Person**" means any natural person or any entity, corporation, partnership, or association of persons.

O.    "**Remotely Created Check**" means a check that is not created by the paying bank and that does not bear a signature applied, or purported to be applied, by the Person on whose financial account the check is drawn.  A remotely created check is often referred to as a "demand draft," "telephone check," or "preauthorized draft."  For purposes of this definition, a Remotely Created Check originates as a paper-based transaction, but can be processed subsequently through electronic means (such as through checking imaging or scanning) or through non-electronic means.

P.    "**Remotely Created Payment Order**" means a payment instruction or order drawn on a Person's financial account that is initiated or created by the payee and that does not bear a signature applied, or purported to be applied, by the Person on whose financial account the order is drawn, and which is deposited into or cleared through the check clearing system.  For purposes of this definition, unlike a Remotely Created Check, a Remotely Created Payment Order does not originate as a paper-based transaction.  A Remotely Created Payment Order is created when a payee directly or indirectly enters financial account and routing numbers into an electronic check template that is converted into an electronic file for deposit into the check clearing system.

Q.    "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

R.    "**Work-at-Home Opportunity**" means any product or service, including any program or plan, that is represented, expressly or by implication, to assist a consumer in any manner to earn money while working from home.

## ORDER

## I.

### BAN ON MARKETING OR SALE OF BUSINESS COACHING SERVICES AND WORK-AT-HOME OPPORTUNITIES

IT IS ORDERED that Defendants are permanently restrained and enjoined from:

A.    Advertising, marketing, promoting, or offering for sale, or assisting in the advertising, marketing, promoting, or offering for sale of any (1) Business Coaching Service, (2) Work-at-Home Opportunity, or (3) service to assist in the creation, advertising, marketing, or promotion of a Work-At-Home Opportunity, including, but not limited to, business entity formation, corporate document filing, bookkeeping services, business plans, market research, business credit development, product sourcing and drop shipping packages, website tools and services (such as website design, building, hosting programs or services), eBay research tools and services, tax planning services, and website marketing packages and services; and

B.    Holding an ownership interest, share, or stock in any business, other than a publicly traded company, that engages in or assists in advertising, marketing, promoting, or offering for sale of any (1) Business Coaching Service, (2) Work-at-Home Opportunity, or (3) service to assist in the creation, advertising, marketing, or promotion of a Work-At-Home Opportunity, including, but not limited to, business entity formation, corporate document filing, bookkeeping services, business plans, market research, business credit development, product sourcing and drop shipping packages, website tools and services (such as website design,

building, hosting programs or services), eBay research tools and services, tax planning services, and website marketing packages and services.

Provided, however, that Subsections I.A and I.B above do not prohibit the Individual Defendants from providing services to an existing business that (i) has 2 or more employees working in a commercial brick-and-mortar location, or has been operating for at least 6 months and generated revenue over $150,000, and (ii) is not involved in the provision of any services related to a Work-At-Home Opportunity.

## II.

## PROHIBITED BUSINESS ACTIVITIES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.      Making, or assisting others in making, directly or by implication, any false or misleading statement about Defendants' identity or purpose to receive Customer Information of a Financial Institution; and

B.      Making, or assisting others in making, directly or by implication, any false or misleading statement in order to obtain Payment Processing services.

## III.

## PROHIBITION AGAINST CREDIT CARD FACTORING

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive

actual notice of this Order, whether acting directly or indirectly, in connection with a Merchant Account are permanently restrained and enjoined from Credit Card Factoring.

## IV.

## PROHIBITIONS RELATING TO TELEMARKETING PRACTICES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with Telemarketing of any good or service, are permanently restrained and enjoined from:

A.      Failing to disclose truthfully, promptly, and in a clear and conspicuous manner: (1) the identity of the seller; (2) that the purpose of the call is to sell goods or services; and (3) the nature of those goods or services; and

B.      Violating any provision of the TSR.

## V.

## PROHIBITIONS AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service other than those banned by Section I of this Order, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.      The cost of any product or service;

B.      Any material restriction, limitation, or condition on the product or service;

C.     Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy for the product or service; and

D.     Any material aspect of the performance, efficacy, nature, or central characteristics of the product or service.

## VI.

## MONETARY JUDGMENT AND PARTIAL SUSPENSION

IT IS FURTHER ORDERED that:

A.     Judgment in the amount of TWENTY SEVEN MILLION DOLLARS ($27,000,000) is entered in favor of the Commission against the Defendants, jointly and severally, as equitable monetary relief.  Upon payment and transfer of all assets specified in Subsections B through D below, the remainder of the judgment is suspended, subject to Subsections E through G.

B.     In partial satisfaction of the monetary judgment set forth above, Defendants are ordered to pay to the Commission One Million and Six Hundred Thousand Dollars ($1,600,000). Such payment must be made by electronic fund transfer in accordance with instructions provided by a representative of the Commission, as follows: payment of $1,000,000, which, as Individual Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission, within 7 days of entry of this Order; and payment in the amount of $600,000 within 45 days of entry of this Order.

C.     In partial satisfaction of the monetary judgment set forth above, Individual Defendant Matthew Rasmussen shall promptly take all necessary steps to sell the 2015 Range Rover identified on his Financial Statement signed on February 28, 2017 ("Matthew Rasmussen Personal Property") within 45 days of entry of the Order for fair market value to a third-party

buyer, and shall transfer the net proceeds of that sale, after the payment of all Matthew

Rasmussen Personal Property-related priority liens and encumbrances, to the Commission by

electronic fund transfer within 3 days of the sale in accordance with the instructions provided by

counsel for the Commission.

      D.     In partial satisfaction of the monetary judgment set forth above, Individual

Defendant David Rasmussen shall promptly take all necessary steps to sell the 2014 Range

Rover identified on his Financial Statement signed on February 28, 2017 ("David Rasmussen

Personal Property") within 45 days of entry of the Order for fair market value to a third-party

buyer, and shall transfer the net proceeds of that sale, after the payment of all David Rasmussen

Personal Property-related priority liens and encumbrances, to the Commission by electronic fund

transfer within 3 days of the sale in accordance with the instructions provided by counsel for the

Commission.

      E.     The Commission's agreement to the suspension of part of the judgment is

expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn

financial statements and related documents (collectively, "financial representations") submitted

to the Commission, namely:

      1.     the Financial Statement of Individual Defendant Matthew Rasmussen

signed on February 28, 2017, including the attachments;

      2.     the Financial Statement of Individual Defendant David Rasmussen signed

on February 28, 2017, including the attachments; and

      3.     the additional documentation submitted by email from Defendants'

counsel Matthew Lewis to Commission counsel dated February 16, 2017, attaching the

following: Individual Defendant David Rasmussen's tax returns for 2013, 2014, and 2015;

Individual Defendant Matthew Rasmussen's tax returns for 2013 and 2014; and Thrive Learning, LLC's tax returns for 2012, 2013, and 2014.

F.      The suspension of the judgment will be lifted as to any Defendant if, upon motion by the Commission, the Court finds that the Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

G.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payments previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## VII.

## ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.     Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

E     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VIII.

## CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.     Failing to provide sufficient customer information that is in their custody, possession, or control to enable the Commission to efficiently administer consumer redress;

B.     Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information,

or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order; and

C.    Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after entry of this Order.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## IX.

## COOPERATION

IT IS FURTHER ORDERED that Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Defendants must provide truthful and complete information, evidence, and testimony. Individual Defendants must appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 20 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena. If the presence of a person described in this paragraph is required outside the State of Utah as well as beyond 100 miles of the person's residence, the FTC agrees to arrange and pay for the person's reasonable travel expenses.

## X.

## ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 3 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and the Corporate Defendant, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in telemarketing; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XI.

## COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the

Commission may use to communicate with that Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2. Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Individual Defendant performs services whether as an employee or otherwise and any entity in which such Individual Defendant has any ownership interest; and (c) describe in detail such Individual Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of the Corporate Defendant or any entity that such Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, each Individual Defendant must report any change in:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Individual Defendant performs services whether as an employee or otherwise and any entity in which such Individual Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  FTC v. Thrive Learning, LLC, et al.

## XII.

## RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years.  Specifically, the Corporate

Defendant and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     accounting records showing the revenues from all goods or services sold;

B.     personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.     all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.     a copy of each unique contract with any payment processor or lead broker.

## XIII.

## COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring the Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to the Defendants or any individual or entity affiliated with the Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIV.

## RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

Dated June 13, 2017.

BY THE COURT:

David Nuffer
United States District Judge